**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Yusuf M. Bogor, on behalf of himself and all others similarly situated,<br><br>    Plaintiff,<br><br>vs.<br><br>American Pony Express, Inc., an Arizona Corporation, a.k.a. Allstate Cab Company, et al.,<br><br>    Defendants. | No. 09-2260-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff's Motion for Preliminary FLSA Class Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. §216(b) and for Expedited Discovery (Doc. #21). The Court now rules on the Motion.

**I. BACKGROUND**

Defendant American Pony Express, Inc. ("APE") leases taxicabs to drivers and, in some cases, fulfills transportation contracts with third parties. APE owns approximately 300 taxicabs that operate in Arizona.

Plaintiff Yusuf M. Bogor rented a taxicab from APE from 2000 to February 2009. APE entered into Taxi Cab Lease Agreements with drivers such as Plaintiff who serviced the airport (hereinafter referred to as "Airport Drivers"). APE classified those drivers as independent contractors.

APE paid Plaintiff and other Airport Drivers no wages. Instead, Plaintiff kept all fares he earned and paid APE $650 a week to rent APE's taxis. Beginning in March of 2007, Plaintiff also had to maintain a $1000 refundable deposit for any damage to the taxis.

Around August 2000, APE entered into the Phoenix Airport Agreement (the "Airport Agreement"), which has since been terminated. The Airport Agreement required APE to identify certain vehicles (not drivers) that APE would dedicate to serving the Phoenix Airport. The Airport Agreement contained specific requirements regarding the taxicabs that APE could use at the airport; including, but not limited to, the year of the vehicles, the number of doors, and the signage on the vehicle. The Airport Agreement also contained several standards for the Airport Drivers, such as dress and hygiene requirements that drivers had to obey if they wanted to service the airport.

APE has different arrangements with the non-Airport Drivers who operate APE taxis Some of the other drivers own their own taxicabs and only use APE's dispatch service. APE also employs a small group of employee drivers (not independent contractors) to provide services to clients under contract. For instance, APE employs drivers to provide non-emergency medical transportation for clients such as the Arizona Department of Economic Security and Maricopa Integrated Health Systems. Finally, APE leases its cabs on a daily or weekly basis to independent contractors who have chosen not to adhere to the standards in the Airport Agreement. These drivers are not permitted to pick up passengers at the airport. APE leases approximately sixty (60) cabs to non-Airport Drivers.[1]

Plaintiff alleges that APE exercised too much control over Airport Drivers for the Airport Drivers to be considered independent contractors. For example, Airport Drivers had to respond immediately to a request for a cab at the airport. Also, APE allegedly forbid the Airport Drivers from attempting to build their own clientele by advertising personal taxi services. Further, APE assigned the Airport Drivers their taxis, which they had to share with

---

[1] APE also owns a large number of taxicabs that operate in the Tucson area.

another driver. And, as previously mentioned, Airport Drivers had to adhere to certain attire and personal hygiene requirements.

APE asserts that Airport Drivers had total control over their schedules and manner of work. The drivers decided when, where , and for how long they wanted to work. APE did not set any schedules for the Airport Drivers.

Plaintiff has filed suit under the Fair Labor Standard Acts (the "FLSA") and certain Arizona wage statutes. Plaintiff argues that APE misclassified its Airport Drivers as independent contractors and failed to pay them the wages owed under the FLSA. Plaintiff sues on his own behalf and on behalf of all others similarly situated. Plaintiff seeks conditional Court approval of an FLSA collective action under 29 U.S.C. §216(b) and notice to other potential plaintiffs of the collective action.

## II. FLSA COLLECTIVE ACTION

Section 216(b) of the FLSA allows employees to represent similarly situated co-workers in an action against their employer for failure to pay wages owed. 29 U.S.C. §216(b)("An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). Only employees who consent in writing can become party plaintiffs to a collective action. *Id*. If appropriate, collective actions benefit the judicial system by efficiently resolving in one proceeding common issues of law and fact. *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 170 (1989).

Plaintiff asks the Court to conditionally certify this action as a representative collective action pursuant to 29 U.S.C. §216(b) on behalf of all similarly situated APE drivers. The decision to certify a collective action under the FLSA is within the discretion of the Court. *Edwards v. City of Long Beach*, 467 F.Supp.2d 986, 989 (C.D. Calif. 2006). To certify a collective action under the FLSA, the Court must determine whether Plaintiff and potential opt-in members are "similarly situated." 29 U.S.C. §216(b). The FLSA does not define the term "similarly situated," and the Ninth Circuit Court of Appeals has not

construed it. *Wood v. Trivita, Inc.*, 2009 WL 2046048 at *2 (D.Ariz. Jan. 22, 2009).

Courts have taken at least three different approaches to analyzing the issue: "(1) a two-tiered case-by-case approach, (2) the incorporation of the requirements of Rule 23 of the current Federal Rules of Civil Procedure, or (3) the incorporation of the requirements of the pre-1966 version of Rule 23 for 'spurious' class actions." *Id*. The majority of courts have adopted the two-tiered approach. *See, e.g., Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1219 (11th Cir. 2001); *Edwards*, 467 F.Supp.2d at 990; *Hutton v. Bank of America*, 2007 WL 5307976 at *1 (D. Ariz. March 31, 2007). This Court will follow the majority two-tiered approach.

Under the two-tiered approach, during the early stages of litigation, the Court evaluates the case under a lenient standard and may grant conditional certification. *Hipp*, 252 F.3d at 1217. The Court then reevaluates, usually prompted by a motion for decertification,[2] the "similarly situated" question at a later stage, once discovery has produced sufficient information regarding the nature of the claims. *Id*. at 1217-18.

At the early stage, or the "notice stage," the Court makes the "similarly situated" decision based on the pleadings and any declarations that have been submitted. *Id*. at 1218 (citing *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir. 1995)). Because the Court does not have much evidence at this stage, the Court uses a fairly lenient standard. *Id*. The second determination, under a stricter standard, is based on much more information, which makes a factual determination possible. *Id*.; *Wood*, 2009 WL 2046048 at *3. At the second stage, the Court reviews several factors, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendant that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1103 (10th Cir. 2001).

---

[2]The Court does not truly "certify" an FLSA collective action, but uses the term decertification for lack of a better word.

At all times, Plaintiff has the burden of proving he meets the "similarly situated" requirement. *See Hipp*, 252 F.3d at 1217.

Because this case is in the early stages, the Court will apply the lenient "notice stage" standard to the similarly situated determination. Plaintiff originally asked the Court to approve a collective action on behalf of all of APE's former and current taxicab drivers from October 2006 through the present. Defendants correctly argued in their Response that the Court could not find that Plaintiff is similarly situated to all APE drivers because of the many different relationships APE has with its drivers.

In his Reply, Plaintiff modifies his request to bring a collective action on behalf of only those "drivers who leased taxis from American Pony Express from October 2006 to the present for the purpose of transporting passengers to and from the airport in accordance with its agreement with the City." (Doc. #53 p. 2.) Plaintiff also attaches the Declarations of additional opt-in plaintiffs to his Reply.

Plaintiff has alleged that APE misclassified all Airport Drivers as independent contractors exempt from the FLSA pursuant to APE's policies and procedures. Defendants admit that APE classified all the Airport Drivers as exempt from the provisions of the FLSA. Plaintiff further alleges that all Airport Drivers had to adhere to strict rules and regulations to service the airport.

Airport Drivers had to respond immediately to a request for a cab at the airport, which caused them to lose fares in other areas. Airport Drivers had to meet certain dress and hygiene requirements. Also, Airport Drivers could not build their own clientele by advertising personal taxi services. Further, APE assigned the Airport Drivers their taxis, which they had to share with another driver, and APE automatically deducted the cost of any damages to a cab from the $1000 deposit, even if another driver caused the damage. Plaintiff has submitted the Declarations of other opt-in plaintiffs who have indicated that they are similarly situated to Plaintiff because they had to adhere to the same APE rules and policies as Plaintiff and did not receive any wages.

While this evidence is minimal, with the narrowing of the "class" requested and the additional Declarations, it is sufficient at the first, lenient stage of the "similarly situated" analysis. The Court therefore will conditionally certify a collective action under the FLSA.[3] After full discovery reveals the actual facts of the case and before the dispositive motion deadline, Defendants may move to "decertify" the case. If Defendants choose to file a "decertification" motion, the Court will engage in a much more rigorous analysis of the "similarly situated" issue.

The Court finds it appropriate to give notice of the collective action to potential plaintiffs going back three years prior to the filing of the Complaint. The Court believes it better to be overly inclusive at the notice stage. But the Court's decision to give notice for the three-year time period does not indicate a finding on willfulness.[4] Defendants may move to dismiss or for summary judgment on an opt-in plaintiff's claim on statute of limitations grounds if appropriate.

Plaintiff has proposed a form of notice to send to potential opt-in plaintiffs as well as an opt-in form. (*See* Exs. A & B to Plaintiff's Motion for Preliminary FLSA Class Certification and to Authorize Notice to Similarly Situated Persons (Doc. ##21-1 & 21-2).) Other than globally objecting to the Court granting collective action status, Defendants did not object to the proposed forms in their Response. Defendants did make some objections at oral argument. Plaintiff indicated he did not have any problems with modifying the proposed notices as suggested by Defendants. Also, the Court has made its own changes to the proposed notice. The Court therefore will approve the proposed form of notice with following modifications.

The "To" line of the proposed notice should be modified to reflect the current

---

[3] Only Airport Drivers that submit written consents will be allowed to participate in the collective action.

[4] Willful violations of the FLSA are subject to a three-year statute of limitations. 29 U.S.C. §255(a).

conditional "class definition" that includes only Airport Drivers. The "Composition of the Class" section must be similarly modified. The second sentence of the "Description of the Lawsuit section" on page 1 should read instead, "Plaintiff drove one of Defendant's taxi cabs that serviced Phoenix Sky Harbor Airport." Also, the first sentence of the "No Waiver of FLSA Rights" section on page 5 should be modified to read, "If you have signed a release or waiver regarding overtime or any other rights under the FLSA, it may not be valid."

Further, potential plaintiffs shall have sixty (60) days, not the proposed ninety (90) days, to opt in to the collective action. The proposed consent to opt-into collective action form must also be modified to reflect the conditional class actually certified, namely: drivers who leased taxis from American Pony Express from October 2006 to the present for the purpose of transporting passengers to and from the airport in accordance with its agreement with the City.

Because discovery has commenced as of the date of this Order, the Court will deny Plaintiff's request for expedited discovery as moot.

Accordingly,

IT IS ORDERED GRANTING Plaintiff's Motion for Preliminary FLSA Class Certification and to Authorize Notice to Similarly Situated Persons Under 29 U.S.C. §216(b) (Doc. #21). But the portion of the Motion requesting expedited discovery is DENIED as moot.

IT IS FURTHER ORDERED that this case is conditionally certified as a representative collective action pursuant to the FLSA, 29 U.S.C. §216(b), on behalf of all current and former drivers who leased taxis from American Pony Express from October 2006 to the present for the purpose of transporting passengers to and from the airport in accordance with its agreement with the City.

IT IS FURTHER ORDERED that Defendant shall identify all current and former Airport Drivers within the relevant time period and produce to Plaintiff within ten (10) days of this Order the names of those Airport Drivers and, if known by Defendant, their last

mailing addresses and/or email addresses.

IT IS FURTHER ORDERED that Plaintiff shall mail notice of the FLSA action to all potential opt-in plaintiffs in the form of the notice attached to Plaintiff's Motion as Exhibit A (Doc. #22-1), as modified by this Order, within thirty (30) days of the date of this Order;

IT IS FURTHER ORDERED that all potential plaintiffs may "opt-in" to the collective action within sixty (60) days of the mailing of the notice of collective action by sending the opt-in form to Plaintiff's counsel.

DATED this 17th day of May, 2010.

James A. Teilborg
United States District Judge